UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel T. HASHIMOTO,
Defendant–Appellant.

No. 87–1332.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1988.

Decided June 21, 1989.

Rehearing and Rehearing En Banc
Denied Sept. 11, 1989.

Earle A. Partington, Honolulu, Hawaii, for defendant-appellant, Daniel T. Hashimoto.

Leslie E. Osborne, Jr., Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee, the U.S.

Before NELSON, REINHARDT and WIGGINS, Circuit Judges.

NELSON, Circuit Judge:

Daniel T. Hashimoto was indicted on three counts of failing to file an income tax return, in violation of 26 U.S.C. § 7203. He was convicted on two counts. On appeal, Hashimoto first seeks reversal of his conviction on the grounds that the district court improperly denied his motion for release of the jury panel list for his trial, which Hashimoto sought so that he could obtain juror tax information under 26 U.S.C. § 6103(h)(5). Second, Hashimoto challenges the district court's refusal to ask the prospective jurors, during voir dire, whether they feared retaliation from the

IRS if they were to acquit the defendant. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 1987, a three count indictment was handed down against the defendant, Daniel T. Hashimoto, alleging that he willfully failed to file income tax returns for the years 1979, 1980, and 1981, in violation of 26 U.S.C. § 7203. On April 14, 1987, Hashimoto filed 34 pretrial motions. Motion # 26 requested that the court order the jury clerk to disclose to Hashimoto the jury panel list for his trial, pursuant to 26 U.S.C. § 6103(h)(5). The government opposed this motion in a response that discussed 23 of the original 34 motions. In reviewing these 23 motions, the magistrate granted only five of them, and Motion # 26 was not among those granted.[1] On July 20, 1987,[2] the district court, per Judge Alan C. Kay, affirmed the magistrate in all respects.[3] During voir dire, conducted on the same day, Hashimoto renewed his objection to the failure to grant Motion # 26. Magistrate Bert Tokairin, who was conducting voir dire, simply noted this objection on the record after the government told him that the District Court had affirmed the Magistrate on this issue.

The defendant had also submitted 90 proposed voir dire questions.[4] Proposed Question No. 35 was as follows:

Are you afraid of the IRS, and do you fear the liklihood [sic] that the IRS will seek retribution against you if you were to render a verdict of acquittal for an innocent defendant? If so, ... would this fear or concern affect in any way your ability to be a fair and impartial juror?

The magistrate reviewed the proposed questions, and covered some of them in the course of his questioning of the prospective jurors. However, no question was asked that was comparable to, or covered the same subject matter as, Question No. 35. Although defense counsel did specifically request at voir dire that the magistrate ask some of the questions that had been submitted, the defense did not go over the proposed questions one by one, and no specific reference to Question No. 35 was made. Instead, counsel stated that, for the remainder, he would "stand on the record as to what we submitted."

The jury was impaneled on July 20, 1987, and the trial began three days later. On July 30, the jury returned a verdict of guilty on the first two counts of the indictment (i.e. failure to file a return for 1979 and 1980), but acquitted Hashimoto on the third count (failure to file for 1981).

On August 6, Hashimoto filed a motion for a judgment of acquittal on counts I & II or, in the alternative, for an evidentiary hearing or a new trial. On September 24, 1987, the court denied Hashimoto's motion without a hearing. Hashimoto filed a motion for reconsideration but it was denied. On October 13, Hashimoto received a sentence of a $5,000 fine and one year in prison on each count, with the prison sentences to run consecutively. The prison sentence on count II, however, was suspended on the condition that defendant be placed on probation for five years after his release from prison on count I. On October 20, 1987, Hashimoto filed a timely appeal to this court. *See* Fed.R.App.P. 4(b). Hashimoto is currently free pending the resolution of this appeal.

## DISCUSSION

### 1. *Introduction*

◼ Hashimoto argues that the trial court's failure to grant his motion for a

---

1. As will be noted below, it appears that the Magistrate simply failed to consider Motion # 26 altogether.

2. The defendant's brief inexplicably states that the date was June 16, 1987, which is clearly incorrect.

3. Judge Kay's order erroneously states that 17 of the 23 motions were denied, when the actual

figure was 18. The error resulted from the fact that Motion # 13 (denied in ¶ 18 of the Magistrate's order) was apparently overlooked by the district court during its review.

4. The original list that was submitted actually contained 101 questions, but eleven of them were withdrawn.

jury panel list, which he requested pursuant to 26 U.S.C. § 6103(h)(5), was erroneous and requires that his conviction be reversed. The government argues that the court's ruling was correct because Hashimoto failed to follow the procedures required to invoke his rights under § 6103(h)(5), and that even if the ruling was incorrect, the error was harmless.

Section 6103(h)(5) states:

> In connection with any judicial proceeding described in paragraph (4)[5] to which the United States is a party, the Secretary [of the Treasury] shall respond to a written inquiry from an attorney of the Department of Justice (including a United States Attorney) involved in such proceeding or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such a proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

Unfortunately, this provision, which was enacted as part of the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1202(a)(1), 90 Stat. 1525, 1675 (1976), has never been subject to interpretation in any published opinion. The question posed by this appeal is thus one of first impression.

■ We begin by noting that the statutory right conferred by this provision is broadly phrased. Section 6103(h)(5) states that the Secretary *"shall"* respond to a written inquiry from a party to a judicial proceeding pertaining to tax administration. Since the Secretary has no discretion to refuse to provide the information requested, the right to such information is absolute so long as (1) the proceeding is one in which the right conferred by § 6103(h)(5) attaches, and (2) the proper procedures to obtain the information have been followed.

### 2. Applicability of Section 6103(h)(5)

■ When Hashimoto initially filed Motion # 26, requesting that he be given a list of prospective jurors so that he could apply to the Secretary for the relevant information, the government resisted the motion *solely* on the grounds that § 6103(h)(5) "relates only to *ADMINISTRATIVE* proceedings and was not designed for, nor has it ever been incorporated into criminal proceedings" (emphasis in original). This argument is utterly frivolous—indeed, sanctionable—and the government has wisely not reasserted it on appeal. There are no juries in administrative proceedings, and it would therefore be exceedingly anomalous to confer a right to tax information concerning prospective jurors *only* in administrative tax proceedings. Furthermore, the legislative history of the provision, while scant, clearly indicates that the provision applies in criminal prosecutions such as the one in this case. *See* H.R.Conf.Rep. No. 1515, 94th Cong. 2d Sess. 477–78, *reprinted in* U.S.Code Cong. & Admin.News, 4181–82 (1976) ("(d) *Tax criminal cases....* In tax cases, the Justice Department and the taxpayer whose liability is at issue will be allowed to inquire of the IRS

---

**5.** Section 6103(h)(4) provides for the release of certain tax return information "in a Federal or State judicial or administrative proceeding pertaining to tax administration," so long as one of four enumerated conditions is satisfied. It is at first glance unclear whether the "judicial proceeding" described in § 6103(h)(5) refers to *any* "judicial ... proceeding pertaining to tax administration," or whether one of the four conditions specified in subsection (4) must also be satisfied. However, it is apparent that none of the four conditions could ever be satisfied with respect to the *juror* tax information required to be disclosed in subsection (5). The juror is not "a party to the proceeding," 26 U.S.C. § 6103(h)(4)(A), nor is any information on the juror's return either "directly related to the resolution of an issue in the proceeding," *id.* § 6103(h)(4)(B), or "directly relate[d] to a transactional relationship" between the juror and a party, *id.* at § 6103(h)(4)(C). Lastly, nothing in the Jencks Act, 18 U.S.C. § 3500, or Fed.R.Crim. P. 16 would require the disclosure of juror tax information, *see* 26 U.S.C. § 6103(h)(4)(D). The fact that the juror information specified in § 6103(h)(5) would thus never fall within any of the four categories specified in subsection (4) seems clearly to indicate that the phrase "judicial proceeding described in paragraph (4)" applies to any Federal or State judicial proceeding "pertaining to tax administration."

as to whether a prospective juror has been under an audit or investigation by the IRS."). Accordingly, the government does not now dispute that § 6103(h)(5) applies in this case.

### 3. Procedures for invoking rights under Section 6103(h)(5)

Rather than arguing that § 6103(h)(5) is inapplicable, the government now argues on appeal that the district court's ruling was proper because a jury panel list was ultimately given to the defendant, and yet he failed to file a request with the Secretary. The government claims that, pursuant to the Plan of the United States District Court for the District of Hawaii for the Random Selection of Grand and Petit Jurors [hereinafter "Juror Selection Plan"], Hashimoto was given a jury panel list seven days before voir dire and yet failed to file a written request with the Secretary under § 6103(h)(5).

■ In evaluating the government's argument, one must first consider what procedure is envisioned by § 6103(h)(5) and then compare that to the procedure that was employed in this case. The statutory provision itself does not describe the procedures to be followed other than to state that the request must be in writing. Nor does the Code of Federal Regulations contain any administrative regulations specifying the procedures that should be followed in order to obtain this information. Therefore, any judgment concerning the proper procedures to be followed under § 6103(h)(5) must be based on a consideration of what procedures will best carry out the purposes of the statute.

It is apparent that a request to the Secretary concerning more than 40 prospective jurors will take some time to process. Furthermore, the request must be in writing, and, given the lack of regulations on this point, must presumably be addressed to the Secretary of the Treasury in Washington, D.C. If the defendant is to obtain this information before voir dire, it seems clear that he or she will have to obtain it sufficiently far in advance of the scheduled trial date to permit a request to be filed and a response to be received. Accordingly, the defendant should be permitted to receive the jury list as soon as it has been drawn. In this case, that means that Hashimoto should have received the list of the more than 40 prospective jurors summoned for this case as soon as these individuals had been selected. Thus, while jury summonses were being prepared and issued for these prospective jurors, Hashimoto could have been preparing his request for the juror information described in § 6103(h)(5). Such a procedure would best carry out the purposes of § 6103(h)(5), while resulting in a minimum of interference or delay in the conduct of voir dire.

The Hawaii Juror Selection Plan, enacted pursuant to 28 U.S.C. § 1863, provides that the names of the prospective jurors called for a given trial shall be released to the parties "[n]o sooner than seven days before the start of [the] trial." However, the presiding judge may "permit the disclosure of the names earlier than the seven-day period where the interests of justice so require." It seems clear that, as a general rule, seven days will not be sufficient time in which to file and receive a response to a written request submitted pursuant to § 6103(h)(5). The mails are not that swift, let alone the bureaucratic process. Therefore, § 6103(h)(5) appears to envision that the defendant will have to make a special request for early release of the jury list. The statute does not contemplate that the defendant will be required to wait until the list is released in the normal course of events. Accordingly, there was no basis for refusing to grant Hashimoto's motion for early release of the jury panel list. The absolute right granted by § 6103(h)(5) applied in this case, and Hashimoto took the necessary steps to invoke it. Therefore, the court erred in refusing to order that the jury list be released in advance of the seven-day period specified in the Juror Selection Plan.

The erroneous nature of the court's ruling is reinforced by the fact that, during the proceedings below, neither the government, the magistrate, nor the district court indicated any basis for failing to grant the

motion. As noted earlier, the government's only argument against early release of the list was wholly specious. To compound the error, the magistrate apparently completely overlooked Hashimoto's motion for the release of the juror list. In his statement of appeal to the district court, Hashimoto clearly and thoroughly spelled out the magistrate's error in overlooking the motion. Nonetheless, despite the fact that 6 out of 17 pages of Hashimoto's appeal statement were devoted to pointing out this error, the district court also completely ignored the issue. Thus, both the magistrate and the district court failed to consider Hashimoto's motion under § 6103(h)(5).

Although the failure of the magistrate and the district court to grant Hashimoto's motion for early release of the list was thus incorrect as a matter of law, this does not dispose of the government's argument on appeal. The government argues that Hashimoto should have filed a request under § 6103(h)(5) as soon as he received a jury list in the normal course of events, pursuant to the Juror Selection Plan. The government's argument is essentially that, by failing to file a request when he ultimately got the list, Hashimoto has effectively waived his right to obtain the information specified in § 6103(h)(5). Put another way, the government's argument is that, when Hashimoto was given the jury list pursuant to the Plan, he should have realized that his appeal of the magistrate's order had become moot, and he therefore should have promptly filed a request with the Secretary of the Treasury.

The defendant's response to this argument is threefold. First, Hashimoto argues that it would be unfair to expect a *pro se* defendant to have realized that he should go forward with a request to the Secretary despite the magistrate's earlier

denial of the motion. The force of this argument is undercut by the fact that Hashimoto appears to have been represented by counsel during most of the relevant time period. The records of the trial court indicate that Hashimoto's trial attorney attended the final pretrial conference held in Honolulu on July 17. Therefore, it appears that Hashimoto was represented by counsel during at least part of the brief pretrial period during which he had the juror panel list.[6] Thus, if the appeal of the motion was in fact moot, there would be nothing inequitable in expecting the defense to have realized this fact and to have proceeded accordingly.

■ Second, Hashimoto argues that a request under § 6103(h)(5) may only be made pursuant to a court order and that therefore he could not have submitted a request to the Secretary without court approval. Hashimoto supports this argument by citing the language of § 6103(h)(4)(D), which provides for the release of tax return information to the extent required by the Jencks Act or Fed.R.Crim.P. 16. Thus, argues Hashimoto, Congress intended that § 6103(h)(5) requests "be made pursuant to Rule 16." This argument is without merit. As noted earlier, *see* note 5 *supra*, the reference in § 6103(h)(5) to "any judicial proceeding described in paragraph (4)" refers only to the language in § 6103(h)(4) concerning any "judicial ... proceeding pertaining to tax administration"; section 6103(h)(5) thus does not incorporate the various enumerated conditions contained in the subsections to § 6103(h)(4). The reason for this conclusion was that the *juror* tax information described in § 6103(h)(5) could never satisfy any of the four enumerated conditions, and therefore the right to such information which is provided in § 6103(h)(5) would never attach. The cor-

---

**6.** It is not possible to specify what dates Hashimoto had the list, inasmuch as the record does not reveal when Hashimoto actually received it. Although the government repeatedly asserts that Hashimoto received the list seven days prior to trial, the only support offered for this assertion is a citation to the District Court Juror Selection Plan. However, the Plan merely states that the information shall be released "*[n]o sooner* than

seven days before the start of [the] trial" (emphasis added). The record does not disclose whether the information was released seven days, four days, or even one day in advance of trial. However, regardless of the length of time Hashimoto had the list, it is clear that he was represented by counsel during part (if not all) of that time.

rectness of this general conclusion is reinforced by a consideration of its application in this specific context. Rule 16 does not in any way require that *juror* tax information be released to the defendant. Accordingly, it would make no sense to read § 6103(h)(5) as requiring that requests for such information be made *pursuant* to Rule 16.

Nonetheless, one might still argue that a court order should be required under § 6103(h)(5) in order to relieve the Secretary of the Treasury of the burden of having to determine whether a request submitted pursuant to this section is valid. As Hashimoto argues, "the Secretary has no readily available means in Washington, D.C., to determine if a request from Hawaii is proper or not." In support of this argument, it might be noted that, although there is nothing in the language of the provision that suggests that Congress expressly contemplated that a court order would be required, in practice a court order will almost always be necessary in order to obtain an early release of the list. Thus, requiring a court order in all cases would likely impose only a negligible burden, if any, on the exercise of the right contained in § 6103(h)(5). Nonetheless, we conclude that there is no good reason to impose such a requirement in all cases. Hashimoto could undoubtedly have submitted alternative documentation that would clearly have established that he was being prosecuted for failure to file an income tax return. Having received such documentation, the Department of the Treasury would have had little difficulty realizing that the statute entitled Hashimoto to the juror information requested.

█ Finally, Hashimoto argues that he could not reasonably have been expected to obtain the juror information from the Secretary in the short period of time between the release of the list and voir dire. The government responds by arguing that

Hashimoto could have applied for a continuance.[7] The government emphasizes that Hashimoto should have realized that his appeal of the magistrate's order had been mooted by the release of the list, and that he should have promptly moved for a continuance while he filed a request with the Secretary. The government asserts that his failure to do so means that he has waived his rights under the statute.

We reject the government's argument because we conclude that Hashimoto's appeal of the magistrate's order had not been mooted by the release of the list. Hashimoto's motion under § 6103(h)(5) was not simply a request for release of the juror list; it was a request for release of the jurors' names *in sufficient time* for Hashimoto to submit them to the Secretary of the Treasury and to obtain a response. Indeed, in his memorandum of points and authorities supporting his motion, Hashimoto expressly noted that "[o]bviously the Secretary of [the] Treasury will need some time, at least two weeks and perhaps a month, to provide all of the information required under [§ 6103(h)(5)]." Furthermore, as outlined above, the statute itself contemplates that the defendant will be given sufficient time to send the list to Washington, D.C. and to receive a reply. Therefore, the issue on appeal before the district court was not only whether Hashimoto would be given the juror list, but whether he would be given it in sufficient time in which to obtain the juror tax information from Washington. Moreover, Hashimoto could reasonably interpret the magistrate's failure to grant his motion as indicating that the defense simply was not entitled to the information sought under § 6103(h)(5). With these issues still under consideration by the district court at the time he received the list,[8] Hashimoto could reasonably conclude that a motion for a continuance would have been duplicative or

---

**7.** The government points out that Hashimoto did in fact move for a continuance on July 13, 1987, but that the motion was based on other grounds.

**8.** Although, as noted earlier, it is unclear when Hashimoto actually received the juror list, *see*

note 6 *supra,* it is nonetheless clear that he received it before the district court issued its order affirming the magistrate. This is true because the district court's order was not issued until July 20, 1987—the day voir dire began.

premature. Accordingly, we conclude that Hashimoto did not waive his rights and that he was therefore erroneously denied the juror information to which he was entitled under 26 U.S.C. § 6103(h)(5).

### 4. Is the error reversible?

 We next must decide whether the error warrants reversal. The government argues that reversal is only required if the error resulted in substantial prejudice to Hashimoto's rights. The government asserts that reversal would be unwarranted in this case because the possibility of prejudice to Hashimoto is too speculative and that therefore any error was harmless. The defense argues that the § 6103(h)(5) information was necessary to enable it to conduct voir dire properly; if it had known that certain jurors had or had not been audited, the defense could have used this information to propose follow-up voir dire questions and could have used its peremptory strikes more effectively.

Inasmuch as § 6103(h)(5) has never been subject to judicial interpretation, it is a question of first impression as to what standard should be applied in deciding whether an erroneous denial of a § 6103(h)(5) motion requires reversal of a conviction. There are several alternatives. On the one hand, it might be argued that since the information provided by the statute is similar in kind and function to that normally obtained during voir dire, it would seem that useful guidance may be provided by referring to the standards used to evaluate whether a trial court's restrictions on voir dire require reversal. That is, reversal would only be required for an erroneous ruling under § 6103(h)(5) if an analogous restriction on voir dire would require reversal. On the other hand, it might be argued that reversal should be required in all cases in which juror tax information was improperly denied, inasmuch as Congress thought the right important enough to create, by statute, an unqualified right to such information in tax cases. Indeed, Hashimoto argues in his appellate brief that the point of § 6103(h)(5) is that the defendant is entitled to get the information directly from the government, without the juror's knowl-

edge. In his words, "[t]he defendant is not obligated to rely on the potential juror's possibly bad memory, honest misinterpretation of the question, or deliberately false answer...." We need not decide which of these is the appropriate standard since we conclude that, even under the less stringent test, Hashimoto's conviction must be reversed.

 In *United States v. Baldwin*, 607 F.2d 1295 (9th Cir.1979), this court spelled out the standards for deciding when inadequate voir dire required reversal:

[Where] the trial judge so limits the scope of voir dire that the procedure used for testing does not create any reasonable assurances that prejudice would be discovered if present, he commits reversible error. The reason for this is that, as a result of such error, the number of meaningful peremptory challenges or challenges for cause available to a defendant necessarily is reduced, and the inhibition of the right to challenge for cause or peremptorily is in that instance deemed to be prejudicial.

607 F.2d at 1298. Thus, at a minimum, reversal is required in this case if an erroneous denial of § 6103(h)(5) information raises "a significant risk of prejudice and examination of the jurors failed to negate that inference." *United States v. Patterson*, 648 F.2d 625, 630 (9th Cir.1981).

We emphasize that only a "significant *risk* of prejudice" must be present to require reversal. Again by analogy to the voir dire cases, we conclude that no showing of *actual* individualized "prejudice" is required. *See Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Baldwin*, 607 F.2d at 1298–99; *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.1977); *United States v. Hill*, 738 F.2d 152, 153–55 (6th Cir.1984); *United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir.1977); *see also United States v. Washington*, 819 F.2d 221, 224–25 (9th Cir.1987) (reversing conviction and refusing to order an evidentiary hearing as to prejudice). The government is thus incorrect in arguing that Hashimoto is required to make an

individualized showing of actual prejudice in this case.

The government argues, however, that there was no significant risk of prejudice because a mere "yes" or "no" answer to a question concerning whether a juror has been audited is of "little or no value in exercising an *intelligent* peremptory" (emphasis in original). Indeed, in its brief to this court, the government goes on at great length in order to show just how little value there is in the information provided under § 6103(h)(5). The problem with this argument is that it simply proves too much. If the government's position were accepted, it is hard to see how an incorrect ruling under § 6103(h)(5) could *ever* be reversible. The government does not argue that the information would have been particularly useless in this case; rather, the government's argument is that such information is, as a general matter, of such limited value that any risk of prejudice is too speculative. This argument is fundamentally at odds with the statute at issue in this case. Congress apparently thought that it was sufficiently important that tax defendants know whether jurors were audited that it created an absolute right to such information. Indeed, the fact that Congress saw fit to create such an absolute right suggests that denial of the right should result in a presumption that there was a "significant risk of prejudice." This presumption might be overcome if the examination of jurors during voir dire is such that the inference of risk of prejudice is negated. *See Patterson*, 648 F.2d at 630.

In this case, none of the questions asked during voir dire was sufficient to counter the presumption of risk of prejudice that, at a minimum, arises from a violation of the statute.[9] Nonetheless, the government argues that the defendant never attempted to explore the issue of such possible prejudice during voir dire, and that none of the voir dire questions proposed by the defense concerned this subject. Thus, the government appears to assert that, to the extent voir dire was inadequate on this point, it was the fault of the defendant. However, the record indicates that the defendant did raise the § 6103(h)(5) issue at voir dire, although it is unclear whether this reference can be fairly interpreted as a request that the jury be questioned directly about past audits. Furthermore, as noted earlier, the defendant requested that the trial court question the prospective jurors about whether they feared IRS retaliation if they were to render a verdict of acquittal. Although we doubt that, as a general matter, prospective jurors in tax cases must be asked such questions, *see United States v. Verkuilen*, 690 F.2d 648, 659 (7th Cir.1982) (district court properly refused to give pre-impaneling instruction that jurors would not be audited if they acquitted inasmuch as the instruction "would have planted an unwarranted seed in the jurors' minds"), the failure to ask such a question in this context can only reinforce our conclusion that the conduct of voir dire in this case was not sufficient to rebut the presumption that, at a minimum, arises from a violation of § 6103(h)(5). Hashimoto was effectively barred from obtaining information concerning the prospective jurors' attitudes and dealings with the IRS.[10]

Moreover, we are doubtful that the defense in a criminal case has a continuing, affirmative obligation to try to undo the effect of an earlier erroneous ruling to

**9.** The dissent argues that the presumption of risk of prejudice was countered in this case by the fact that the magistrate asked a number of questions relating to the ability of the prospective jurors to be impartial. Dissenting op. at 1136. Specifically, the dissent points out that the magistrate asked the prospective jurors whether they might be prejudiced "because of the nature of the charges." *Id.* We do not believe that these general questions concerning the overall ability of jurors to be impartial were sufficient to counter the presumption of risk of prejudice. The questions left completely unex-

plored the subject of the prospective jurors' attitudes and dealings with the IRS.

**10.** In its brief to this court, the government asserts that the magistrate did in fact question the prospective jurors "concerning their dealings with the Internal Revenue Service." However, an examination of the record reveals that the questioning to which the government refers only dealt with whether any of the prospective jurors was employed by, or had a family member who was employed by, the IRS.

which a proper objection has already been made. At any rate, we conclude that, in light of the trial court's refusal to grant Hashimoto's motion under § 6103(h)(5), it would be unreasonable to have expected the defense to engage in the futile gesture of requesting the same information during the court's questioning on voir dire.

Accordingly, we conclude that the error in failing to give Hashimoto the juror tax information to which he was entitled raises, at a minimum, a presumption of a risk of prejudice, and that the examination of the jurors during voir dire was not such as to negate that inference. Hashimoto's conviction must therefore be reversed.

## CONCLUSION

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

WIGGINS, Circuit Judge, dissenting:

Danny Hashimoto had an income of $271,680.21 in 1979 and $106,820.66 in 1980. For whatever reason, he decided not to file an individual tax return in either year. He pleaded not guilty to charges of violation of 26 U.S.C. § 7203. The evidence of his guilt at trial was overwhelming and he was convicted. Hashimoto now argues that his conviction should be reversed because the district court precluded him from exercising his statutory right under section 26 U.S.C. § 6103(h)(5) to inquire of the Secretary of the Treasury whether the prospective jurors were being or have been the subject of an audit or other tax investigation by the Internal Revenue Service (IRS). This procedural challenge comes about as a result of Congress's failure to provide any guidance as to the procedures to be followed in obtaining the information. Most significant, the statute includes no time provisions establishing how far in advance of trial a jury list must be made available to a defendant, thus ensuring that a defendant will have sufficient time to make a timely filing with the Secretary.

The majority performs an admirable job in applying the statute notwithstanding the lack of help from Congress and in the absence of any administrative regulations. I agree, based on the circumstances of this case, that the district court erred in failing to grant Hashimoto's motion for early release of the jury list. It cannot reasonably be argued that seven days is sufficient time to file and receive a response to a written request submitted pursuant to section § 6103(h)(5).

I part company with the majority, however, in its conclusion that the district court's failure timely to release the jury list is reversible error. Looking for guidance to our previous decisions in which we have sought to determine when inadequate voir dire requires reversal, the majority holds that denial of information under section § 6103(h)(5) results in a "presumption that there was a 'significant risk of prejudice' ... [that may be] overcome if the examination of jurors during voir dire is such that the inference of risk of prejudice is negated." At 1134. The majority then concludes, in summary fashion, that the questions asked during voir dire were insufficient to counter the presumption of risk of prejudice. I have no quarrel with the standard employed by the majority, but I do disagree with its application. In my opinion, the magistrate's questions unequivocally negated the inference of risk of prejudice. Additionally, even if they did not, I still would not find the error to be reversible because Hashimoto failed to request that the jury be asked about past or present audits.

It seems to me that the proper point of departure in attempting to determine whether the "risk of prejudice" was negated by the questions asked during voir dire is the identification of the prejudice caused by the defendant's lack of knowledge concerning the prospective jurors' status with the IRS. Presumably, the benefit derived by a defendant from knowing whether a potential juror has been or is being audited (aside from the fact that the defendant is placed on equal footing with the government) is the added insight in determining whether a particular juror may be biased or partial either for or against the defendant. This being the case, questions designed to

ascertain whether a potential juror is capable of rendering an impartial verdict should be deemed sufficient to negate the presumption of risk arising from the defendant's inability to obtain the jury information under section 6103(h)(5).

The magistrate's specific questioning of the jurors in this case regarding their willingness to be fair to both sides, their possible bias, prejudice against either side, and freedom from influence was calculated to guarantee educated exercise of the peremptory challenges and to lay a proper basis for challenges for cause. The negative answer given by each of the prospective jurors to the following question is itself sufficient proof that any risk of prejudice was negated: "Do you know of any reason why you may be prejudiced for or against the Government or this Defendant because of the nature of the charges? You know the nature of the charges." Reporter's Transcript, July 20, 1987, at 57. Based on the magistrate's questioning, neither Hashimoto nor the court had any basis upon which to speculate that a verdict rendered by any of the prospective jurors would not be impartial.[1]

Even if the magistrate's questioning did not negate the risk of prejudice, I would not find the district court's failure timely to release the list to be reversible error because Hashimoto did not request that the magistrate inquire whether any of the jurors had or were being audited. Although, as the majority notes, he did renew his request for the information before the magistrate, Hashimoto did not ask the magistrate to question the jurors on that issue. Indeed, Hashimoto submitted over one-hundred requested jury instructions to the court, but apparently did not deem the issue important enough to include a question asking whether the jurors had or were being audited. Hashimoto's disinterest with the question during voir dire is further evidenced by his failure to join the government's request that the magistrate inquire of the jurors whether or not they had "any dealings with the IRS." Although Hashimoto did request that the magistrate query the jurors about whether they feared IRS retaliation, the issue of retaliation is separate and distinct from whether the jurors had been or were subject to an audit. Fear of retaliation is likely to exist apart from whether one has been audited.

Congress has created a trap which operates against the successful prosecution of defendants charged with failing to file their income taxes. Regardless of the evidence of their guilt, a defendant need only plead not guilty and request a jury trial. When the names of the prospective jurors are revealed to the defendant, he then exercises his right, granted under 26 U.S.C. § 6103(h)(5), to inquire of the Secretary of the Treasury whether the prospective jurors have been the subject of an audit by the IRS. Because the requested information cannot, as a practical matter, be accumulated and transmitted to the defendant prior to voir dire, the majority concludes that reversible error occurs.

Congress should address the issue raised by this appeal. Until it chooses to do so, however, we must inject some common sense into a statute that unreasonably burdens successful prosecution. The best basis for doing so in this case is to find the error of the government not to be prejudicial. The next case may not be disposed

---

1. The majority finds that the questions asked by the magistrate left "completely unexplored the subject of the prospective jurors' attitudes and dealings with the IRS." Maj. op. at 1134 n. 9. I do not understand how the majority can conclude that the magistrate's pervasive questioning of potential bias and prejudice left unexplored the prospective jurors' attitudes toward the IRS. It is true that the magistrate did not explicitly ask the jurors whether they had any dealings with the IRS. Whether a prospective juror has had any dealings with the IRS, however, is designed to aid a defendant in determining if the juror is biased either for or against him. It seems to me that the next best thing to asking, "Were you audited?", is to inquire about any resulting prejudice. Even the magistrate thought these questions were sufficient and accordingly refused the *government's* request that he explicitly ask the jurors whether they had any dealings with the IRS. By discounting the magistrate's inquiry into bias and prejudice, the majority implicitly holds that only the question, "Were or have you been audited?", will suffice to negate the presumption of risk of prejudice. I find this result untenable.

of so easily. I would require that a defendant making a request under section 6103(h)(5) do so as soon as the jury list becomes available, and to make a request for a reasonable continuance so as to afford the Secretary the opportunity of responding to the request before trial. If a defendant fails to make his request in a timely manner, and to request a simultaneous continuance, I would conclude that any error in failing to supply the requested information is harmless.

For the foregoing reasons, I respectfully dissent.