UNITED STATES of America,
Plaintiff–Appellee,

v.

David HARDY, Defendant–Appellant.
(Two Cases)

Nos. 90–10535, 91–10181.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1991.

Decided Aug. 7, 1991.

Alexander Silvert, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

Dean D. Paik, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before BEEZER, NOONAN and FERNANDEZ, Circuit Judges.

NOONAN, Circuit Judge:

David Hardy appeals his conviction of willfully failing to file income tax returns in violation of 26 U.S.C. § 7203.

We affirm.

## BACKGROUND AND PROCEEDINGS

Hardy is a 42–year–old licensed real estate salesman, who has a B.A. in Economics from the University of Colorado. Hardy filed federal income tax returns through 1979. In 1980 he moved from Colorado to Hawaii and did not file a federal tax return after that time.

On March 30, 1990 Hardy was indicted for willfully failing to file income tax returns for the years 1983–86. During these years he was employed as a time-share salesman and received wages and commissions of, respectively, $42,250, $35,275, $33,035, and $16,243. His income came either in cash or checks which he endorsed in favor of his wife. In late 1986 he told his employer that he did not pay taxes and that the Internal Revenue Service could do nothing about it because everything was in his wife's name. In 1983 and again in 1986 he filed W–4 forms claiming that he was exempt from withholding. No basis existed for this claim.

Hardy was arraigned on April 2, 1990. He objected to the jurisdiction of the court. At the same time he informed the magistrate that he wanted to represent himself with the help of Eric R. Eleson. Eleson is not a licensed attorney. The magistrate asked if Hardy understood the nature of the charges against him. Eleson, who was present, replied that Hardy did not understand the nature of the charges because he did not know whether he was being prosecuted under the laws of the United States or under the Uniform Commercial Code.

On the date of his hearing on April 9, 1990, Hardy filed six notices and demands with the court, demanding counsel of his choice, Eric Eleson, and dismissal based on the lack of jurisdiction. On April 30, 1990 he filed an additional 14 notices and demands, alleging that he was not a person as defined in the Internal Revenue Code, that the indictment was vague, and that the court lacked jurisdiction over him and over the subject matter.

On May 2, 1990 Hardy again appeared before the magistrate and repeated his demand for Eleson as his counsel. He also stated that he was appearing specially and not generally. Eleson appeared with him. The magistrate explained to Hardy that because Eleson was not a licensed attorney he could not represent him. The magistrate went on to explain to Hardy the dangers of appearing without counsel and offered to appoint a lawyer to represent him.

The magistrate again asked Hardy if he understood the charges. Prompted by Eleson, Hardy stated that he did not because he had not received a Bill of Particulars. The magistrate asked Hardy whether he wished to waive counsel and Hardy said no. He again insisted that Eleson represent him and argued that lay counsel was guaranteed by the Sixth Amendment. Eleson renewed this demand. The magistrate found that Hardy had waived counsel. Hardy, prompted by Eleson, objected.

On May 29, 1990 Hardy failed to appear for a scheduled pretrial conference. The conference was continued to May 31, 1990. Again Hardy failed to appear. The magistrate issued a bench warrant, and Hardy was arrested pursuant to it on June 4, 1990. On this date the magistrate continued the trial, originally scheduled for June 5, to July 24.

On July 13, 1990 Hardy appeared for his final pretrial conference. Hardy again stated that he was appearing specially and not generally. He demanded criminal sanctions against the court and the United States Attorney's office for acting outside the scope of their jurisdiction. On July 18, 1990 the government filed a motion to determine the status of Hardy's representation.

The trial date was again continued, and on July 30 Hardy appeared before the district court on the government's motion to determine the status of his representation. He again objected to the court's jurisdiction. The court inquired if he wanted a lawyer. On this day and the following day

the inquiry was made five times. Each time Hardy replied that he wanted to have Eleson represent him. When the court on July 31 said, "Do you want an attorney, yes or no? I'll still give you an opportunity to get an attorney." Hardy replied, "No, I don't, your honor."

On July 31, 1990 the jury was selected. The court instructed Hardy on procedure as to jury selection and as to procedure in trial.

Prior to jury selection Hardy had exercised his right under 26 U.S.C. § 6103(h)(5) to make a written request that the government provide him with information whether any prospective juror had been audited or investigated by the IRS. The government had responded to this request. However, on the morning of jury selection, due to an error by the clerk, a panel different from that as to which Hardy had been given information was brought into court. Of the seventy-five persons on the new panel, forty were different from the list previously provided.

Hardy told the judge that he wanted the question put to the prospective jury members, "Have you ever been audited or investigated by the IRS?" The court replied, "I'm going to ask them that." A little later Hardy declared: "I haven't received information from the Secretary of the Treasury—information regarding the jury members as to whether they have been investigated or audited. The information I received yesterday is signed by Bill Brown's secretary ... and this information has to come from the Secretary only." The government observed that there had been a delegation of authority. The court said, "Each one of the jurors is going to be sworn under oath, and I'm going to ask them questions whether they have ever been investigated by the IRS." Hardy responded, "I would object ... due to *United States v. Hashimoto* rules, you need ample time to receive that information from the request to the Secretary." The court said Hardy's objection was noted. The court then interrogated each juror chosen from the panel as to whether the juror had been "audited" by the IRS. Hardy challenged

two of the prospective jurors who stated they had been audited and one prospective juror whose daughter had been audited.

After the jurors had been selected and sworn in, Hardy objected that the court had failed to ask if the jurors had been under investigation. The court then said, "Let me ask any of the jurors have any of you ever been investigated by the IRS?" There was no audible answer. The court then said, "No one. No? Juror number 1, no; juror number 2, no; juror number 3, no; number 4, no; five, six, seven, eight, nine, ten, eleven, twelve, and two alternates, no? Okay. Fine."

After the jury selection, the case was delayed a week. During this period the government inquired and received the section 6103 information from the Secretary of the Treasury on the twelve jurors and two alternates. By letter of August 7, 1990 the IRS replied that none of them had been audited or investigated, except one. The court gave Hardy the opportunity to object to this juror; he did so and the juror was replaced. The trial proceeded.

Hardy was convicted on each count. He was sentenced to consecutive sentences of one year each on counts 1, 2 and 3 and five years probation and community service of 500 hours on count 4. He appeals.

## ANALYSIS

■ *The information as to the jurors.* The statute required the Secretary of the Treasury to respond to a written inquiry from a party to a judicial proceeding pertaining to tax administration who asked "whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service." 26 U.S.C. § 6103(h)(5) (1988). When there was a substitution of jurors for the jurors as to whom Hardy had been given such information, there was a failure to comply with the statute.

The question remains whether the harm done was cured by the court's questions to the jurors on voir dire as to whether the jurors had been audited or investigated. In

*United States v. Hashimoto*, 878 F.2d 1126 (9th Cir.1989), the government at first refused to provide a list of prospective jurors and finally did so only seven days before voir dire. We held that the court erred in refusing to order the government to provide the list earlier, so that Hashimoto would have time to address his request to the Secretary. *Id.* at 1130.

The government then argued that Hashimoto's conviction should be reversed only if the error resulted in substantial prejudice to Hashimoto's right. On voir dire, the jurors had been asked general questions as to their ability to be impartial, but nothing as to their attitudes towards, or dealings with, the IRS. We held that when the statute was not complied with there was "the presumption of risk of prejudice" and that the general questions about impartiality failed to rebut the presumption. *Id.* at 1134. Accordingly, we reversed Hashimoto's conviction.

*Hashimoto* was followed by one in which the defendant made a request for the juror information and the government supplied the information in such a way that the defendant received it only 20 minutes before trial. The information supplied covered only six years while the statute did not limit the information in any way. We held that the statute had been violated and the significant risk of prejudice had not been rebutted; the conviction was reversed. *United States v. Sinigaglio*, 925 F.2d 339 (9th Cir.1991).

Hardy's case is different from these cases. The government did attempt to supply the requested information in a timely fashion, but because of an administrative error about the jury pool failed to do so. The district court, however, obtained the information equivalent to what Hardy would have obtained under the statute.

Unlike *Sinigaglio* there was no restriction as to the years covered. Unlike *Hashimoto*, the questions were entirely specific and paraphrased the statute. The information provided was so timely that Hardy was able to use the information to strike those jurors he thought were prejudiced because of the relations of the IRS with them. Fur-thermore, the record demonstrates that no juror who remained on the panel had been the subject of an audit or investigation. Consequently, the presumption of a significant risk of prejudice, which arose from the initial failure to comply with the statute, was rebutted and the initial error was harmless. *Cf. United States v. Lussier*, 929 F.2d 25, 30 (1st Cir.1991).

■ *The right to counsel.* Hardy engaged in game playing, typical of a tax evader, in his responses to the court as to whether he waived his right to counsel. Such behavior is both confusing and exasperating. We have held that in appropriate circumstances a court can hold that such conduct amounts to waiver. *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir.1987). These circumstances are present here.

The general rule is clear that the defendant must be judicially informed about the risks of proceeding without counsel; that the court must discuss with him the charges he faces and the possible penalties; and he must be asked if he wishes to waive the right to counsel and defend himself. On this record we have no doubt that Hardy was fully aware of the charges he faced and the possible penalties and knew the risks of proceeding as he did. He equivocated in response to the questions about his wish to waive counsel but finally answered unequivocally that he did not want a lawyer. The record shows that knowingly and intelligently he chose to exercise his constitutional right to defend himself. It is true that in *United States v. Turnbull*, 888 F.2d 636, 638 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 78, 112 L.Ed.2d 51 (1990) we said that the defendant's statement that he did not understand the charges "made a waiver impossible." But our statement is not so absolute as to exclude the possibility that the district court could conclude from the conduct and responses of the defendant that he was play acting and in fact well understood what he was charged with. Hardy was a well-educated man who was able to invoke case law, such as *Hashimoto*, and who gave every sign of being entirely aware of knowing exactly the charges against him; he

defended himself ably at the trial, as his counsel on appeal remarks. The district court was not compelled to take his statement of ignorance of the charges at face value. We hold that there was no denial of the right to counsel.

*Other Issues.* Hardy objects to the court's denial of his proposed separate instruction on good faith. The court did give an instruction on "willfully" which was essentially the instruction on willfulness that has been approved in *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991). Hardy's objection fails.

■ Hardy objects to an evidentiary ruling of the court that excluded testimony that his mother had told him of a man who had failed to file his taxes for 12 years and suffered no consequences. The testimony would not have bolstered Hardy's good faith defense. There was no abuse of discretion in excluding the proffered testimony.

■ Hardy objects that the court failed to inform him of his right to challenge jurors. But the court did inform Hardy that he could challenge any prospective juror if he did not like "the way they answered the questions or for some particular reason." Hardy did in fact challenge the jurors who had been audited. He has not shown any other juror could have been excluded for cause. In addition, he did not use all of his peremptory challenges, and, as a result, he cannot complain of any error regarding challenges for cause. *Cf. United States v. Daly,* 716 F.2d 1499, 1507 (9th Cir.1983). His argument is without merit.

Hardy contends that the court was actually biased against him. From the beginning of the proceedings Hardy challenged the jurisdiction of the court and made frivolous objections to the proceedings. As a consequence, the court took control of the case with a firm hand. Hardy has made no showing of actual prejudice resulting from an extrajudicial source. *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986).

Hardy was sentenced under pre-Guidelines standards. He contends that the sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. The argument is based on the contentions that he was given "the maximum permissible jail time" plus the maximum probationary sentence; that the court refused to consider positive factors mentioned in the presentence report; that the court did not consider Hardy's acceptance of the jury's finding of guilt; that the court showed "disdain for Hardy's courtroom behavior"; and that the court had a "personal dislike of the type of offense Hardy committed." Further, Hardy contrasts his sentence with that given by the court to another defendant convicted, like Hardy, of three misdemeanor counts of failure to file income tax returns. This defendant was given a one year sentence of imprisonment on counts 1 and 2, to run concurrently, and five years probation, without community service, on count 3. The contention is further made that "a brief sampling" of several other districts shows Hardy's sentence to be unusually tough.

The maximum time to which Hardy could have been sentenced was four years. He, therefore, did not receive the maximum. There was no obligation on the part of the court to reduce the sentence by such small positive indications in Hardy's favor as did appear in the presentence report. There is not such disparity between Hardy's sentence and the others cited in his appeal as to warrant the conclusion that his sentence was disproportionate to the point of violation of the Constitution. It is true that after he was convicted Hardy wrote a letter expressing his regret for his misdeeds. But until this point was reached he had in many ways manifested that he was going to do his best to get away with what he could; he manifested no sense of a legal obligation to comply with the tax laws. We have already held that the court was not actuated by any extrajudicially caused bias, and the court's statement that "it is a privilege to pay taxes in this country" did not reflect a personal view of the taxing system but was an elementary lesson in civic responsibility.

AFFIRMED.