**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward S. NIELSEN, Defendant–Appellant.**

No. 92–10329.

United States Court of Appeals, Ninth Circuit.

Submitted June 14, 1993 *.

Decided July 29, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Edward S. Nielsen, pro se.

Daniel Bent and Omer G. Poirier, Asst. U.S. Attys., Honolulu, HI, for the plaintiff-appellee.

Before: FAIRCHILD,** BEEZER and WIGGINS, Circuit Judges.

** Honorable Thomas E. Fairchild, Senior Circuit Judge, Seventh Circuit, sitting by designation.

FAIRCHILD, Senior Circuit Judge:

## I. OVERVIEW

Edward S. Nielsen and two others formed Mid–Pacific Airlines in 1979. Nielsen was vice-president and responsible for most financial matters, including accounting and paying transportation tax. Nielsen was convicted of willfully aiding, assisting in, procuring, counseling, and advising the presentation of Quarterly Federal Excise Returns for three quarters of 1985 that were false and fraudulent as to a material matter, in violation of 26 U.S.C. § 7206(2). In each case, the return concerned transportation taxes, 26 U.S.C. § 4261,[1] collected by Mid–Pacific from its customers, 26 U.S.C. § 4291.[2] Nielsen was sentenced to consecutive terms of three years imprisonment on Count 1, three years imprisonment on Count 2, and three years probation on Count 3. On appeal, Nielsen contends that: (1) the court abused its discretion by denying his right to information in accordance with 26 U.S.C. § 6103(h)(5); (2) the district court abused its discretion during *voir dire* by failing to inquire properly about the weight jurors would give to IRS witnesses, and by failing to ask whether the jury knew any prospective witnesses; (3) there was insufficient evidence on which to convict him for the charged crimes; and (4) the district court abused its discretion in the manner it responded to juror questions. Facts relevant to this appeal are discussed within the context of the issues. We affirm.

## II. DISCUSSION

### A. Right To Juror Information Pursuant To 26 U.S.C. § 6103(h)(5)

Nielsen first contends that the court abused its discretion by denying his right to information in accordance with 26 U.S.C. § 6103(h)(5), which requires that in connection with certain judicial proceedings the Secretary shall respond to an inquiry of a party as to whether a prospective juror has or has not been the subject of any audit or tax investigation by the IRS. Section 6103(h)(5) further provides that the "Secretary shall limit such response to an affirmative or negative reply to such inquiry."

About five weeks before trial, Nielsen requested this information concerning the 100 names on the jury list. Twenty days before trial, the IRS district director supplied information showing that twelve of the individuals had been the subject of an audit or investigation. Just before trial the director wrote again, expanding the list to seventeen. He stated that the list was based on all available information, that the service was still searching, and that a final response could not be provided at that time.

Nielsen did not move for a continuance, but filed what he called a motion for disclosure. At the hearing, the government produced the local IRS district disclosure officer. The officer explained the difficulties in making a complete search in order to be able to say that an individual had never been the subject of an audit or investigation. He stated that 1965 "is as far back as our records could possibly go", and that some service centers could not go back to 1965 due to the deletion of old files. Moreover, a change of name and the fact that a prospective juror may have filed joint returns, while the records reflect the other spouse's social security number as primary, may present further difficulty. The officer explained that the non-listing of 83 names meant that the service had been unable to recover information that these persons were, in fact, examined. He summarized that "[i]t is not likely, but it is possible" that continued searching would produce more information.

1. Section 4261 imposes a tax upon the amount paid for taxable transportation (8% in 1985). 26 U.S.C. § 4261(a). Except as provided in section 4263(a), the taxes imposed by this section are to be paid by the person making the payment subject to the tax. 26 U.S.C. § 4261(d).

2. Section 4291 provides that "[e]xcept as otherwise provided in section 4263(a), every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment." 26 U.S.C. § 4291. The filing of quarterly reports of liability for the tax is governed by 26 C.F.R. §§ 49.6011(a)–1 and 49.6071(a)–1.

The district judge found that the statutory requirement had been substantially met, but stated his intention to ask each prospective juror whether the juror had been audited. Twenty-six persons were examined before the jury was selected. The judge did ask 24 persons on the jury panel, individually, whether they had been subject to an audit by the IRS, but failed to ask the other two. Those two served on the jury and had not been on the IRS list of persons who had been previously audited or investigated. The omission was clearly inadvertent, and Nielsen did not call it to the court's attention. Four of the 26 were on the IRS list of persons audited, but were struck from the jury by either the government or the defendant. One person who was not on the IRS list answered that he had been audited on the mainland "back in the '60s". He was struck by the defendant.

If substantial compliance was sufficient to satisfy § 6103(h)(5), we would readily conclude that the district court's finding of substantial compliance is not clearly erroneous. Nielsen argues, however, that the statute gives him a right to a definitive answer from the IRS as to every individual on the list of 100.

We have addressed compliance with § 6103(h)(5) before. In *United States v. Hashimoto*, 878 F.2d 1126 (9th Cir.1989), this court reversed a tax conviction, holding that the district court's refusal to furnish the defendant with a list of prospective jurors in sufficient time to obtain a response was a violation of defendant's § 6103(h)(5) rights. In *United States v. Sinigaglio*, 942 F.2d 581 (9th Cir.1991), defense counsel received a chart on the morning of trial which indicated the jurors who had been audited during a six year period. This court held that the six year limitation was arbitrary and failed to comply substantially with § 6103(h)(5). Although this court rejected a *per se* rule of reversal, it concluded that the *voir dire* in that case did not negate the risk of prejudice caused by the incomplete disclosures, and reversed. The district court made a timely request under § 6103(h)(5) in *United States v. Hicks*, 947 F.2d 1356 (9th Cir.1991), but limited the scope of the request to six years.

This court found the limitation improper, but affirmed because Hicks could not demonstrate that he was prejudiced in any way. In *United States v. Hardy*, 941 F.2d 893 (9th Cir.1991), the district court inquired on *voir dire* as to whether any juror had been audited or investigated by the IRS. This court found that the judge's questions on *voir dire* rendered harmless the failure to supply the § 6103(h)(5) information in time for jury selection.

In the case before us, the district court did not refuse timely release of the jury list (*Hashimoto*), and the § 6103(h)(5) disclosure was not arbitrarily limited in scope (*Sinigaglio* and *Hicks*). The IRS made a substantial search, supplying 12, and later 17, names (out of 100) of those persons who had been the subject of an audit or investigation. The judge asked each prospective juror whether that juror had been audited, except for the two individuals that he had overlooked. However, Nielsen did not alert the judge to the oversight. Having failed to do so, defendant cannot, in our opinion, be entitled to claim that he was prejudiced by the omissions.

The facts are more than sufficient to support a finding of substantial compliance. Indeed we are satisfied that the IRS made every effort which could reasonably be expected of it. Nielsen's over-strict reading of § 6103(h)(5) would require delay of every tax trial until the IRS is able to say with certainty whether each person on the jury list has or has not been audited or investigated. Some prosecutions might have to be abandoned. The IRS would have to pursue the search without regard to the resources it would need to expend. In our view Congress must not have intended so extreme a requirement. *See United States v. Spine*, 945 F.2d 143, 147–48 (6th Cir.1991).

We conclude that where, as here, there has been substantial disclosure by the IRS of persons audited and investigated, the trial court has supplemented the information by *voir dire*, and there is no palpable suggestion of either party being prejudiced, § 6103(h)(5) was not violated.

B. *Voir Dire*

■ Nielsen argues that the district court abused its discretion during *voir dire* by failing to inquire properly about the weight jurors would give to testimony of IRS witnesses and whether jurors knew prospective witnesses. In conducting *voir dire*, the trial judge has wide latitude and any failure to ask specific questions is reversed only for an abuse of discretion. *United States v. Dischner*, 974 F.2d 1502, 1522 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993); *United States v. Powell*, 932 F.2d 1337, 1340 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 256, 116 L.Ed.2d 210 (1991); *United States v. Click*, 807 F.2d 847, 850 (9th Cir.1987).

■ Prior to trial, the district court conducted *voir dire* on its own, as is within its discretion. *United States v. Cutler*, 806 F.2d 933, 937 (9th Cir.1986). The judge had in advance directed all potential jurors to inform him if they knew any witness. He instructed the jurors to listen to the names of the witnesses "because when I talk to each one of you during what we call the voir dire . . . I want you to tell me whether or not you know any of these people, or whether the names that they've read off ring any bells with you[.]" Subsequently, the judge again asked the potential jurors to relate whether they knew any witnesses that were announced. He additionally asked, "would [you] . . . give [a revenue] agent any more credibility or believability than any other person, or would you just judge him the same as any witness".

The court did not abuse its discretion by not asking these questions individually of each juror, and Nielsen does not allege any facts suggesting that any member of the *venire* knew any witness or favored the testimony by the IRS. In any light, "[f]ailure to ask jury *venire* members if they would be unduly influenced by the testimony of law enforcement officers does not necessarily constitute reversible error." *United States v. Payne*, 944 F.2d 1458, 1475 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992) (citing *Powell*, 932 F.2d at 1340; *United States v. Baldwin*, 607 F.2d 1295, 1298 (9th Cir.1979)). Factors relevant to this inquiry include the importance of the government agent's testimony to the government's case as a whole, the extent to which the credibility of the government agent witness is put into issue, the extent to which the testimony of the agent is corroborated by non-agent witnesses, and the extent to which the question concerning the *venire*-person's attitude toward government agents is covered in other *voir dire* questions. *Powell*, 932 F.2d at 1340; *Payne*, 944 F.2d at 1475.

The government asserts that this issue cannot be raised on appeal because Nielsen failed to object to the court's questions at trial. Nielsen contends there was plain error. We disagree. Here, a substantial portion of the government's case came from those witnesses not connected with law enforcement, and the only IRS witness testified generally about reporting requirements.

C. Sufficiency Of The Evidence

1. *Proof That Excise Tax Returns Reported Amounts Substantially Lower Than the Actual Tax Liability*

■ Nielsen made motions for judgment of acquittal, founded on insufficiency of the evidence, and he argues here that it was error to deny them. He contends that there was no evidence to establish the amounts of tax liability which should have been reported, and thus no proof that the return was false as to any material matter.

For the tax years at issue, the tax liability which the airline was required to report and pay over was eight percent of the amount paid for air transportation within the United States. 26 U.S.C. § 4261(a). The tax is paid by the person who pays for transportation, 26 U.S.C. § 4261(d), and the person receiving the payment for service is to "collect" the tax. 26 U.S.C. § 4291. Thus when the airline receives payment for the transportation, it also collects the tax and becomes liable to the government for this amount. Requirements for reporting liability, paying over to the government, and making deposits are found in 26 C.F.R. § 49.6011(a)–1(ff). Obviously there will be situations where refunds will be made in lieu of providing transporta-

tion, but then credit may be taken on subsequent returns. 26 U.S.C. § 6415.

For proof of Mid–Pacific's liability for air transportation in 1985, the government relied on an account in the company's own books. Richard Gustafson, manager of budgets and reports, testified that the account was part of the company's business records, made and kept in the ordinary course of business, with entries made at or near the time of the transactions reflected by a person with knowledge of the transaction. As such, they were admissible pursuant to Federal Rule of Evidence 803(6).

Nielsen's argument is not really directed at the accuracy of the account as representing eight percent of the payments received in each quarter for tickets, together with coupons redeemable for tickets. As a result of an earlier audit, Mid–Pacific had changed its bookkeeping so as to reflect all these payments as of the time of receipt. His contention appears to be based on his own theory of the law, developed in his defense testimony, that the company did not become liable for the tax, or need to report it, until the transportation was furnished. As we understand him, he contends that the amount which should have been reported in each quarter would be the amount of tax on the value of all transportation furnished during that quarter, and that the government's proof was insufficient unless structured on that basis.

We are not persuaded. The statutes clearly contemplate that the company's liability arises at the time it receives payment. Section 6415, providing for credits for refunds on subsequent returns, is consistent with that reading. The regulations contemplate the selling of coupon books in advance of travel, such as those sold by Mid–Pacific in this case. Section 49.4261–7 provides: "The tax applies to the amounts paid for script books. The tax shall be collected from the purchaser at the time the script book is sold, and not when and as the script is used for transportation." 26 C.F.R. § 49.4261–7.

We conclude that there was sufficient evidence of the company's liability in each of the quarters at issue. At trial, the government showed that the returns understated the liability by $260,000, $316,000 and $283,000, respectively. The government need not prove the exact amounts that should have been reported on the tax returns. *United States v. Johnson,* 319 U.S. 503, 517, 63 S.Ct. 1233, 1240, 87 L.Ed. 1546 (1943); *United States v. Stone,* 770 F.2d 842, 845 (9th Cir.1985) ("it is well settled that the government is not obliged to prove the exact amount of a deficiency so long as the taxpayer's understatement of income is substantial"). Here, the return required a report of liability for tax, and the amount not reported was substantial.

2. *Proof That Nielsen Knew or Believed That the Reported Tax Liability Was False and Fraudulent*

■ Nielsen also asserts that there was no evidence that he knew the reports of tax liability were false and fraudulent. To the contrary, there was ample evidence that Nielsen directed the concealment and underreporting of the company's tax liability. Gustafson, who made out and signed the returns, testified that during the first, third, and fourth quarters of 1985, Nielsen told him to make the semi-monthly checks to the government at arbitrary amounts substantially lower than the company's liability. When it was time to make the returns for those quarters, Nielsen told him to report as liability only the amounts which the company had paid. The total amount underpaid for the year was $750,352.90. Nielsen told Gustafson that the company simply could not afford full payments, and that the only way the government would ever find out is if it did an audit. In addition, Gustafson testified that he prepared a memo stating that Mid–Pacific had been underreporting the excise taxes, and that Nielsen directed him to take the memo out of the tax file and not to write any future memos on that subject. According to Gustafson, Nielsen further stated that if the memo was ever discovered by the IRS, it would show that the underpayment was not unintentional. Gustafson's testimony on this point was corroborated by other witnesses.

There was additional evidence that the company was short of cash. Underpaying the government and concealing the shortfall by underreporting the liability allowed Nielsen to meet other obligations. Nielsen

thought of the government as a creditor who could be misled by false reporting and believed that the underpayment could not be discovered unless the IRS performed an audit. Clearly, the government brought forth sufficient evidence of Nielsen's knowledge and intent that the returns were false.

Nielsen testified in defense that he believed the tax law did not require the company to pay the tax until the transportation was furnished. Although he stated that he "carried the total amount on the books," he paid the government what he thought was due, according to his theory, and told Gustafson to report the amounts paid. He gave no figures as to how he arrived at the amounts he paid, but stated that he worked with "estimates". In substance, he was claiming that he did not believe the returns were false or fraudulent, based on his view of the law. The jury did not accept his explanation, but apparently believed Gustafson and corroborating witnesses.

D. Whether Court Abused Its Discretion By Responding To Juror's Questions

■ During deliberations, the jury sent a note to the judge, reading: "We would like a copy of the law prevalent to this case—Air Transportation law. When is the tax due to the IRS? Exactly." In reply to the jurors' question, the court wrote that "[t]he 'transportation' tax is due when it is paid by the customer and must be reported and paid during the quarter, and reported quarterly on the Form 720 by the airline. If it is subsequently determined that an airline has overpaid the excise tax in a previous quarter, it can take a credit on a future Excise Tax Return (Form 720) or request a refund." The court also reminded the jury, "it is for *you* to determine whether the returns were false *and* whether the defendant believed they were false *and* whether the defendant willfully aided, assisted, or advised in the preparation of the Excise Tax Returns."

The answer correctly stated the substance of the statutes and regulations in material respects. True, the jury's question was "When is the tax due to the IRS", *i.e.*, when is the airline required to pay over the tax it had collected. The judge's answer used the word "due" in a different context, *i.e.*, when the airline collects the tax and becomes liable to the government for it. This distinction is irrelevant to this case. The issue before the jury was whether the liability for tax had been fraudulently reported. The defendant was not charged with causing insufficient payment when payment was due, although it was proved that he did so. We see no prejudice to Nielsen in any discrepancy between the jury's and the judge's use of the word "due". We additionally find no merit in any of Nielsen's arguments concerning the judge's answers.

E. Ineffective Assistance Of Counsel

■ And finally, Nielsen attacks the effectiveness of his trial counsel. Nielsen identifies three alleged errors by counsel: (1) failure to object to the way that *voir dire* was conducted; (2) failing to object to the absence of (failing to request) an instruction explaining the duty of Mid–Pacific in collecting, reporting and paying transportation taxes; and (3) failing to address a 1982 memo of an accountant which would support defendant's theory of that duty.

As to the first contention, there was no abuse of discretion in the conduct of the *voir dire*, and counsel's failure to object was neither below the range of professional competence nor prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Denham v. Deeds*, 954 F.2d 1501, 1505 (9th Cir. 1992). As to the second contention, Nielsen is correct in that there was no instruction explaining the duty of an airline with respect to these taxes. Neither the government nor the defense offered such an instruction. Perhaps the jury would not have asked its question during deliberations had such an instruction been given. Nonetheless, we cannot say that the failure of defense counsel to formulate and request an instruction in these circumstances was below the range of professional competence, nor prejudicial. We reach the same conclusion with respect to the November 26, 1982 memo. The memo discussed Mid–Pacific's old method of reporting and paying its transportation tax liability "for the actual semi-monthly period in which it

provided air transportation," and concluded that the payments were timely under the regulations. Defense counsel placed the memo in evidence and examined defendant concerning its content. Nielsen now indicates that his counsel should have placed more emphasis on this memo. Counsel may well not have placed greater reliance on it because at about the same time as the memo, the IRS audited Mid–Pacific, and claimed that the method used at that time resulted in a deficiency of $80,000. Mid–Pacific paid the deficit and changed its method so as to pay the tax when collected.

Accordingly, based on the foregoing discussion, the judgment of the district court is AFFIRMED.