**UNITED STATES of America, Plaintiff,**

v.

**Patrick JOHNSON, Tyrone Hall, aka Too Sweet, Eddie Edwards, aka Tweet, Sheila Johnson, aka Sheila Wilson, Alicia Young, Lula Mae Metz, aka Jessell Hobbs, Yvonne Stribling, Derek Burkes, Donald Todd, Ronald Crutchfield, aka Killer, Danny Webb, aka Danny Young, Craig Smith, Oscar Mellado, Defendants.**

**No. CR 90–497(A)–WDK.**

United States District Court,
C.D. California.

April 19, 1991.

---

the attorney for the government to obtain from the Secretary of the Treasury a yes or no answer regarding whether any of the prospective jurors has been the subject of any audit or other tax investigation by the Internal Revenue Service.

Stribling is charged with various tax offenses. Accordingly, she has an absolute right to such audit information if, and only if, she has made a timely request for an early release of the prospective juror list. 26 U.S.C. § 6103(h)(5); *United States v. Sinigaglio*, 925 F.2d 339, 91 D.A.R. 1534 (9th Cir.1991).

## II. Stribling's Motion is Not Timely

### A. *The Motion was filed after the Rule 12 cut-off date*

The cut-off date for filing Rule 12 motions was extended by stipulation to January 15, 1991. Stribling's motion was filed March 21, 1991, ten days before the date set for the hearing and less than four weeks before the trial date. The government has not yet even had time to file a reply to this motion.

Accordingly, Stribling's application is not timely, and the motion is DENIED.

### B. *Section 6103(h)(5) requires prior notice to the Court*

Alternatively, the Court denies the motion on the ground that it was not filed within the time frame envisioned by the statutory provision itself. Congress has provided no guidance in applying this statute, and the Code of Federal Regulations is conspicuously silent on this subject. Although § 6103(h)(5) does not describe the period in which to file a request, consideration of the procedures necessary to carry out the purposes of the statute makes it clear that ample notice must be given to the Court to accommodate such a motion.

The government estimates that Stribling's request to the Secretary concerning approximately 300 prospective jurors will take up to six weeks to process, if limited

Lourdes G. Baird, U.S. Atty., Robert L. Brosio, Chief, Crim. Section, Monica Bachner, Deputy Chief, Narcotics Section, Jeffrey S. Sinek, Narcotics Section, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff.

Yvonne Stribling, in pro. per.

David Reed, (Stand–By Counsel), Beverly Hills, Cal., for defendants.

## ORDER RE MOTION FOR INTERNAL REVENUE SERVICE AUDIT LIST

KELLER, District Judge.

### I. Introduction

Defendant Stribling moves the Court pursuant to 26 U.S.C. § 6103(h)(5) to order

to the scope of the I.R.S. computer records.[1] In order to obtain this information before voir dire, it is clear that Stribling's request must have been made sufficiently far in advance of the April 17, 1991, trial date to permit a response to be received. *United States v. Hashimoto*, 878 F.2d 1126 at 1131 (9th Cir.1989) ("§ 6103(h)(5) appears to envision that the defendant will have to make a special request for early release of the jury list.").

Accepting the government's estimate for purposes of discussion, in order to receive potential jurors' tax history for the past twelve years, the Secretary would have needed the name, social security number, address, and name of any joint filer of each prospective juror no later than March 6, 1991—two weeks before Stribling even filed her motion.

Furthermore, due to the length and complexity of this case, the process of compiling a list of potential jurors has taken several weeks. Approximately 3,000 pre-voir dire questionnaires were sent out on March 6 to screen in advance those unable to serve. This pre-screening process was the subject of a status conference as early as October, 1990, and was thoroughly briefed by counsel in the ensuing months. Throughout January and February, counsel for the government negotiated with defense counsel on the scope, content and form of these questionnaires, and the procedure to be engaged. In sum, counsel and the Court spent several months formulating and effectuating a plan which would permit the Court to voir dire and secure a fair jury panel in the most efficient manner. Defendant Stribling was present for each of the conferences held on this subject, and joined in the motions and briefs of other defendants with respect to this process. At no time did Stribling notify the Court of her intention to press a motion under § 6103(h)(5). Had she done so, the Court could have, and would have, factored into the calculus the time needed by the Secretary to process her request. At this late date, granting this motion would necessitate a significant delay in the April 17 trial date, and would jeopardize the validity of the 3,000 time questionnaires sent to prospective jurors asking them if they were available to sit for a four to five month trial. Such massive disruption of the administration of justice could not have been intended by the drafters of the statute.

## III. A Practical Alternative

Although at a loss to perceive the need for § 6103(h)(5), the Court believes it can accommodate Stribling's untimely concern and nevertheless carry out the nebulous purposes of § 6103(h)(5).

### A. *The Purpose of § 6103(h)(5)*

As a preliminary matter, it should be observed that to the extent § 6103(h)(5) is intended to root out bias, the bias likely to be rooted favors the defendant, not the government. A juror who knows he has been the subject of a tax investigation will either disclose or deny that fact during voir dire. The statute's concern obviously goes to the latter type juror.

A juror who chooses not to disclose his past dealings with the I.R.S. probably does so because the admission would cause embarrassment. Such a person would likely favor the defendant over the government. At least, it is difficult to conceive of a juror who has experienced the investigative powers of the I.R.S. favoring the government over the defendant, a co-investigatee.

On the other hand, a juror whose past experience with the I.R.S. is positive would

---

1. Apparently, the I.R.S. can only trace this information by computer for the past 12 years. For prior audit history, the Service would have to conduct the search by hand. In this case, the government informs the Court that such a search could take over one year. Congress could not have believed that the value of access to tax information, independent of voir dire, merited such a delay. *Cf.* 18 U.S.C. § 3161 (The Speedy Trial Act).

Nevertheless, the Ninth Circuit's most recent pronouncement states very clearly that were defendant Stribling's motion timely made, she would have an absolute right to prospective jurors' complete tax history. *See United States v. Sinigaglio*, 925 F.2d 339 91 D.A.R. 1534 (9th Cir.1991); and discussion, *infra*.

have no reason to mislead the court and keep those relations a secret. No shame attaches to a citizen who is audited and then exonerated, and there would be no reason for a juror to lie about his audit history.

Finally, a juror who was investigated by the I.R.S. and reveals this information during voir dire is more likely to be struck by the government than the defendant facing criminal tax charges. And, of course, a juror who does not know he was investigated would bear no animus either way.

It is this Court's considered opinion that proper voir dire can negate whatever risk of prejudice Congress presumably thought this statute might disclose. Congress has not explained why in a tax case, as opposed to all other cases, there is reason to believe that the specific questioning of the jurors regarding their willingness to be fair, their possible bias, prejudice against either side, freedom from influence, and their past dealings with the I.R.S. is insufficient to guarantee the educated exercise of peremptory challenges and to lay a proper basis for challenges for cause. *See, e.g., Hashimoto*, 878 F.2d at 1136 (Wiggins, J., dissenting) In dissenting to the Ninth Circuit's first exposition on the applicability of this section, Judge Wiggins perceptively stated that by this statute,

> Congress has created a trap which operates against the successful prosecution of defendants charged with failing to file their income taxes. Regardless of the evidence of their guilt, a defendant need only plead not guilty and request a jury trial. When the names of the prospective jurors are revealed to the defendant, he then exercises his right, granted under 26 U.S.C. § 6103(h)(5), to inquire of the Secretary of the Treasury whether the prospective jurors have been the subject of an audit by the IRS. Because the requested information cannot, as a practical matter, be accumulated and transmitted to the defendant prior to voir dire, the majority concludes that reversible error occurs.

> Congress should address the issue raised by this appeal. Until it chooses to

do so, however, we must inject some common sense into a statute that unreasonably burdens successful prosecution. *Hashimoto*, 878 F.2d at 1136 (Wiggins, J., dissenting).

Despite Judge Wiggin's appeal, Congress has not yet addressed this issue, nor has the Ninth Circuit resolved the problems associated with this statute.

Just recently, the Ninth Circuit reversed a conviction where the appellant's motion under § 6103(h)(5) was granted and the government provided audit history information dating back six years. *Sinigaglio*, 925 F.2d 339 (1991). Without addressing the sheer impracticability of not limiting, in some way, the scope of the search to be undertaken by the Secretary, (*see supra*, n. 1) the appellate panel held that the government "acted arbitrarily and in violation of the statute" by providing information for only a six year period when the section "clearly states that a defendant has the right to know whether a 'prospective juror 'has or has not been' audited or investigated."

The only rationale offered for reversing the appellant's conviction in *Sinigaglio* was that because the supplied audit history information "went back only six years, the defendant has no way to verify the completeness of the new information and was hindered in his use of the information to which he had a right." Choosing not to explore "the precise value of access to tax information, independent of voir dire," the *Sinigaglio* court also found it "unnecessary to define further the parameters of when an error under § 6103(h)(5) might be harmless."

This Court respectfully disagrees that because Congress did not limit the period of review of jurors' tax history, courts are prohibited from reading a reasonableness standard into the statute. In light of the statute's indefiniteness, and the quixotic result of a literal interpretation, a court may engage the well established principle of statutory construction that "[s]tatutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *American Tobacco Co. v.*

*Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982); *see also, Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983) ("It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute.", *citing, Brown v. Duchesne,* 19 How. 183, 194, 15 L.Ed. 595 (1857) ("[T]his mode of expounding a statute [literal construction] has never been adopted by any enlightened tribunal—because it is evident that in many cases it would defeat the object which the Legislature intended to accomplish.")); *Bechtel Constr., Inc. v. United Brd. of Carpenters & Joiners,* 812 F.2d 1220, 1225 (9th Cir.1987) ("Legislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious."); *See generally, Sutherland Stat. Const.* § 45.12 (4th Ed.) ("departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question."); Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed,* 3 Vand.L.Rev. 395, 399 (1950) (A "court must strive to make sense as a whole out of our law as a whole. It must ... take the music of any statute as written by the legislature; it must take the text of the play as written by the legislature. But there are many ways to play that music, to play that play, and a court's duty is to play it well, and in harmony with the other music of the legal system.").

## B. *Post Voir Dire I.R.S. Verification*

■ Despite the inexplicable need for § 6103(h)(5), this Court believes it can accommodate Stribling's untimely concern as follows. During voir dire, jurors will be asked by the Court whether they have been audited or investigated by the I.R.S.[2] This should suffice, as it does in every other circumstance, to enable the defense to conduct voir dire properly and make effective use of its peremptory strikes. The Court will impanel six alternate jurors in addition to the regular jury, and the attorney for the government will be ordered to obtain from the Secretary of the Treasury a § 6103(h)(5) response as to these eighteen jurors.[3] The Secretary should be able to process this request quickly. If the Secretary contradicts the response of any juror's answers in voir dire, defendant Stribling will be permitted to strike that juror for cause.[4] If she so chooses to strike a seated juror, an alternate will be drawn in accordance with Fed.R.Crim.Proc. 24(c). If she chooses to strike an alternate juror, the

2. Defendants are hereby ordered to submit by April 11, 1991, a consolidated list of no more than 10 (ten) proposed voir dire questions to be asked in this regard. Government will have until April 15 to respond.

3. The Secretary will be ordered to conduct this search for the longest period of time feasible. Although this is inconsistent with the holding of *Sinigaglio,* the Court will not require a hand search of each juror's tax history. This is merely an attempt to accommodate Stribling's concern and offer a practical alternative to the dictates of *Sinigaglio,* which, in this instance, do not bind this Court.

4. Such a strike must be for cause, rather than peremptorily following further voir dire. Otherwise, the law of unintended consequences is likely to reign supreme. For example, picture the juror who, on voir dire, honestly denies having ever been investigated by the I.R.S. and then, based on the Secretary's contrary indication, is called into open court to be questioned about his tax history. A juror who had no cause for bias, because he has no knowledge of his near run-in with the revenue office, is suddenly informed, in open court, that he had in fact been investigated. And not only did the government investigate him before, now the government is performing secret background checks on him. The Orwellian suggestion is overwhelming: the government says he's lying. The prejudice to the government is obvious, and irreparable by an instruction.

Nothing is served by conducting such voir dire, other than ruining an otherwise fine juror and imposing great stress on an innocent person called upon to perform his civic duty. A juror prepared to pass on another person's culpability is suddenly concerned about his own perceived guilt—for no reason, and a risk of prejudice, not before present, is suddenly created.

trial will proceed without that alternate.[5]

Counsel is hereby ORDERED to submit within one week of the date of this Order any objections to the foregoing proposal.

IT IS SO ORDERED.

---

5. It is well within this Court's power to allow a defendant to exercise such a strike. *See,* Fed.R. Crim.Proc. 24. It is exactly as if defendant Stribling were given the last exercise of a peremptory challenge. The other defendants, having exercised their peremptories, would have no choice but to accept the panel as constituted, if Stribling chose not to exercise her peremptory. Accordingly, the Court has clear authority to give a particular defendant the final peremptory say in how the jury will be constituted. This outcome, envisioned by the above procedure, raises no Constitutional implications for the other defendants.