UNITED STATES of America,
Plaintiff–Appellee,

v.

Bruno F. SINIGAGLIO, Defendant–
Appellant.

No. 90–30109.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1991.

Decided Feb. 5, 1991.

As Amended on Denial of Rehearing
and Rehearing En Banc
Aug. 20, 1991.

William A. Cohan, Cohan & Greene, Encinitas, Cal., for defendant-appellant.

Shirley D. Peterson, Asst. Atty. Gen., Robert E. Lindsay, Alan Hechtkopf, Yoel Tobin, U.S. Depart. of Justice, Washington, D.C., for plaintiff-appellee.

Before WRIGHT, BRUNETTI and LEAVY, Circuit Judges.

## ORDER

The opinion filed on February 5, 1991, 925 F.2d 339, is amended by the addition of a dissenting opinion by Judge Brunetti.

Judges Wright and Leavy have voted to deny the petition for rehearing, and Judge Leavy has voted to reject the suggestion for a rehearing en banc. Judge Brunetti has voted to grant the petition for rehearing and the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35(b).

The petition for rehearing is DENIED and the suggestion for a rehearing en banc is REJECTED.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

Criminal charges were brought against Bruno Sinigaglio, a federal employee, for tax code violations. He argues his conviction must be reversed because his right to juror information under 26 U.S.C. § 6103(h)(5) was impaired. We find the government did not substantially comply with the statute, we reverse and remand for a new trial. We reject his other claims of error.

## I

Sinigaglio was a human factors engineer employed by the civil branch of the United States Army. He allegedly has not filed a tax return since 1977 when he vowed never to pay taxes again.

A six-count information charged him with the misdemeanor of willful failure to file income tax returns from 1982 to 1987. In preparing his defense, Sinigaglio moved for release of classified military information about his employment. The magistrate granted the motion. Five days later, Sinigaglio was indicted for the original six counts plus one felony count for willfully submitting a false, fictitious or fraudulent claim for a refund. His motion to dismiss for prosecutorial vindictiveness was denied.

Sinigaglio moved for an early release of the prospective juror list so he could obtain information from the Treasury Department to learn whether any prospective juror had been audited by the Internal Revenue Service. The government later offered to assist him in obtaining the information. Two days before trial, the government sent to the defense attorney's office in Georgia a handwritten chart indicating whether prospective jurors had been audited from 1983 through 1988. Having already left for Sinigaglio's trial in Washington state, defense counsel received the information only 20 minutes before voir dire. Sinigaglio's motion for a continuance was denied. During voir dire, Judge Tanner asked all prospective jurors if any of them had ever been audited or investigated by the I.R.S.

The jury found Sinigaglio guilty on all counts. He is on bail pending appeal.

## II

Sinigaglio argues that the district court erred when it failed to grant a continuance so he could send the list of prospective jurors to the Treasury Department to inquire whether any of them had ever been audited or investigated by the I.R.S. He urges this court to adopt a per se rule of reversal for any violation of his rights under 26 U.S.C. § 6103(h)(5).[1] The government argues that any error was harmless.

Under § 6103(h)(5), defendants charged with tax offenses may request such information from the Secretary of Treasury. Defendants have an absolute right to the audit information so long as a timely request is made to the court for an early release of the prospective juror list. *United States v. Hashimoto*, 878 F.2d 1126, 1130 (9th Cir.1989). Because such a request was made here, the first question we must address is whether the government's attempted compliance with § 6103(h)(5) was sufficient.

The handwritten chart Sinigaglio received on the morning of trial indicated that only three of the prospective jurors had been audited during 1983–1988. Section 6103(h)(5) clearly states that a defendant has the right to know whether a prospective juror "has or has not been" audited or investigated. There is no six-year limitation. We hold that by limiting the audit history information to six years the government acted arbitrarily and in violation of the statute.

We must now consider whether the government's failure to comply substantially with the statute is reversible error. In *Hashimoto*, this court expressly declined to decide whether errors under § 6103(h)(5) require a per se rule of reversal or whether the error creates a presumption of a significant risk of prejudice, which may be overcome by the judge's voir dire questioning. *Id.* at 1133–34. Applying the standard for reviewing the adequacy of voir dire, the court held that at a minimum reversal is required in these cases when the error "raises 'a significant risk of prejudice and examination of the jurors failed to negate that inference.'" *Id.* at 1133 (quoting *United States v. Patterson*, 648 F.2d 625, 630 (9th Cir.1981)).

We reject the per se rule of reversal. We find it unnecessary to define further the parameters of when an error under § 6103(h)(5) might be harmless because the significant risk of prejudice was not negated here.[2]

During voir dire, jurors were asked in open court if they had ever been audited or investigated by the I.R.S. Eight said they had been. Because the government-supplied chart went back only six years, the defendant had no way to verify the completeness of the new information and was hindered in his use of the information to which he had a right. The precise value of access to tax information, independent of voir dire, need not be defined here. We conclude only that, while the voir dire here did elicit additional information, it did not negate the significant risk of prejudice caused by the government's incomplete disclosure of audit information.

The district court erred in denying the motion for a continuance. We reverse on this issue and remand for a new trial.

1. Section 6103(h)(5) provides:
   **Prospective jurors.** In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice (including a United States attorney) involved in such proceeding or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

2. The Fifth Circuit has applied a harmless error standard to § 6103(h)(5). *See United States v. Masat*, 896 F.2d 88, 95 (5th Cir.1990). Without defining the precise standard it applied, it found the government's failure to provide the requested information was harmless because it was "not prejudicial." *Id.*

## III

■ Sinigaglio argues that the government filed the additional charge of willfully submitting a false, fictitious or fraudulent claim for refund out of prosecutorial vindictiveness for his motion for disclosure of classified information. He notes that the felony charge was added five days after his motion was granted. The government states that it added the charge because it had reevaluated the case.

■ To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such. *United States v. Gallegos–Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982). There is no evidence here of actual vindictiveness and Sinigaglio's attempt to show an appearance of it fails. "When increased charges are filed in the routine course of prosecutorial review or as a result of continuing investigation, there is no realistic likelihood of prosecutorial abuse, and therefore no appearance of vindictive prosecution arises merely because the prosecutor's action was taken after a defense right was exercised." *Id.* at 1169 (citation omitted).

## IV

■ Sinigaglio argues that the district court erroneously excluded his offer of expert witness testimony. The expert would have testified that Sinigaglio's obsessive-compulsive personality disorder prevented him from forming the necessary specific intent to commit the crime.

■ The district court has wide latitude to exclude expert testimony. *United States v. Byers*, 730 F.2d 568, 571 (9th Cir.), *cert. denied*, 469 U.S. 934, 105 S.Ct. 333, 83 L.Ed.2d 270 (1984). This court reviews the exclusion of such testimony for manifest error and will sustain the ruling when the testimony would not have materially assisted the jury. *Id.* We agree with the district court that the testimony would not have materially assisted the jury. The exclusion of this evidence was not manifestly erroneous.

REVERSED and REMANDED for a new trial.

BRUNETTI, Circuit Judge, dissenting as to part II of the Opinion:

In *United States v. Hashimoto*, 878 F.2d 1126 (9th Cir.1989), this court stated that the presumption of prejudice that arises when the government fails to comply with section 6103(h)(5) "might be overcome if the examination of jurors during *voir dire* is such that the inference of risk of prejudice is negated." *Id.* at 1134. The majority in *Hashimoto* held that merely questioning the jurors whether they had "any reason why you may be prejudiced for or against the Government or this Defendant because of the nature of the charges," *id.* at 1136 (Wiggins, J., dissenting), "was not such as to negate that inference." *Id.* at 1135. *Hashimoto*, however, clearly contemplates that *voir dire* could, if the proper questions were asked, overcome the presumption.

In this case, the district court asked the jurors (1) if they had "ever been audited by the Internal Revenue Service?"; (2) if they had "any disputes other than just a formal or informal audit, that someone talked to you about your return or wrote to you about your returns, any connection with the IRS?"; and (3) whether "either you or your husband or wife, whatever the situation, your mothers and fathers, your children, your brothers and sisters, ever have any connection other than just filing your income tax with the IRS? Anything at all?" The court also explained why the questions were being asked:

The reason we ask the question, we don't ask it to embarrass you or anything else, we ask it to see if maybe you not only— you have an audit problem or problem with the IRS, but maybe your parents, or your husband and wife, or your children, or someone else, that might talk to you about it, and we try to find out if you have formed any preconceived ideas that might be considered by some people as biases or prejudices, either for the IRS or against the IRS, or for the defendant or

against the defendant, because of that experience with the IRS.

Now, any of you feel that way that have either you or members of your family have had a problem, as people call them, or experience with the IRS that was unpleasant, unsatisfactory, that you have, because of that experience, formed some conclusions or biases or prejudices or preconceived ideas because of that experience that might affect your fairness and impartiality in this case, either for or against the government, or for or against the defendant, because of that experience?

The majority states that although these questions "did elicit additional information, [they] did not negate the significant risk of prejudice caused by the government's incomplete disclosure." If the questions asked of the *Sinigaglio* veniremen were insufficient, however, district courts will be hard pressed to develop questions that will meet with this court's satisfaction. Though the majority states that it does not apply a per se rule of reversal, its practical effect is just that. District courts will undoubtedly feel compelled to dismiss charges or require unnecessary and costly, if not impossible, discovery rather than attempt to discern what possible questions this court would find acceptable. I do not believe Congress in passing this statute intended to effectively eliminate the court's power to discover bias during *voir dire* when this statute applies. *See Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984) (*voir dire* has long been relied upon for identifying bias among veniremen), *United States v. Johnson*, 762 F.Supp. 275 (C.D.Cal.1991) (proper *voir dire* can negate any potential risk of prejudice Congress intended in section 6103(h)(5)).

The opinion also conflicts with the Fifth Circuit's decision in *United States v. Masat*, 896 F.2d 88 (5th Cir.1990). In *Masat*, the jurors were asked "whether or not they had been the subject of an audit or controversy with the IRS." *Id.* at 95. The court found that the government's failure to comply with the statute was harmless error because "the jurors were asked the rele-

vant questions by the trial judge." In our case, the court's questioning was even more extensive than in *Masat*. I find no basis for distinguishing or rejecting the Fifth Circuit's analysis. *See also United States v. Lussier*, 929 F.2d 25, 30 (1st Cir. 1991) (district courts are encouraged to take reasonable and feasible steps to enable defendants to obtain 6103(h)(5) information, but "we do not lay down a hard and fast rule").

I respectfully dissent as to part II.