990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas G. SMITH, Defendant-Appellant.
 No. 90-10603.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 18, 1992.
Decided March 17, 1993.
 
 Before WILLIAM A. NORRIS, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Thomas G. Smith appeals his jury conviction for conducting a continuing criminal enterprise, conspiracy to import marijuana, conspiracy to commit interstate travel in aid of racketeering, and making a false statement in violation of 18 U.S.C. § 1001.
 
 
 3
 Smith argues on appeal that 1) certain evidence introduced at trial was obtained as the result of an illegal search, 2) that he was vindictively prosecuted, and 3) that the government withheld and tampered with his personal papers, thereby depriving him of his right to effective assistance of counsel. We reject all of Smith's claims on appeal except for his claim of an illegal search. We remand to the district court for the limited purpose of making additional findings regarding the existence and content of a local inventory search policy.
 
 
 4
 * The Fourth Amendment allows the opening of closed containers where local inventory policy permits. See Florida v. Wells, 495 U.S. 1 (1990). However, there must be a local policy. Id. at 4. Although the district court made some findings of fact, the court made no findings on whether a local inventory search policy existed at the time of the search, and, if one existed, what that policy allowed.
 
 
 5
 We have considered and reject the government's contention that the search was incident to the arrest. Since determining the existence and content of a local inventory policy is crucial in deciding whether the Fourth Amendment has been violated, we remand for the limited purpose of making additional findings regarding the existence and content of such a policy.
 
 II
 
 6
 Smith acknowledges that none of the several actions which he claims to constitute "prosecutorial misconduct" requires reversal of his conviction. Instead, Smith claims that the actions of the prosecution, when viewed in cumulative fashion, constitute prosecutorial vindictiveness.
 
 
 7
 Smith cites his prosecution under the drug "Kingpin" statute, 21 U.S.C. § 848, as evidence of prosecutorial vindictiveness; Smith maintains he was not the "boss" of the operation. The indictment is consistent with the statute. 21 U.S.C. § 848 does not require Smith to have been a "boss" of the organization; it is sufficient that he organized, managed, or supervised at least five people. United States v. Zavala, 839 F.2d 523, 527 (9th Cir.), cert. denied, 488 U.S. 831 (1988). Smith does not challenge the evidence indicating that he played such an organizational role.
 
 
 8
 Smith argues the government's addition of the Kingpin charge after he exercised his right not to plead guilty is additional evidence of vindictiveness. The fact that the government added the charge after Smith exercised his right not to plead guilty, however, creates no constitutional problem when those charges are "filed in the routine course of prosecutorial review or as the result of continuing investigation...." United States v. Sinigaglio, 942 F.2d 581, 584 (9th Cir.1991). Smith does not dispute the government's contention that the third superseding indictment was based on evidence secured in a plea agreement with Smith's codefendants. Although Smith believes the charge was "really" motivated by the pressures of publicity, there is no evidence in the record to support this claim.
 
 
 9
 Smith argues that the government's motion to disqualify defense counsel shows the government was "out to get him" and raises the spectre of vindictiveness. We disagree. Such a motion is perfectly appropriate when there is a possibility of a conflict of interest. Here, the possibility of a conflict was apparently serious enough to prompt defense counsel himself to offer to withdraw from the case.
 
 
 10
 The government's failure to provide a tape to the defense in what Smith calls a "timely manner" is also cited as evidence of prosecutorial vindictiveness. Smith claims that, had the tape been provided earlier, it could have been used to impeach a witness who testified (falsely) that the tape contained a threat by Smith against that witness.
 
 
 11
 Two facts are important here: 1) the tape contained no such threat, and 2) the offending witness was called by the defense. Smith would have us hold the government had an obligation to provide to the defense sooner than it did a tape, having no evidentiary value in itself, so that it might be used against one of the defense's own witnesses in case he perjured himself on the stand. We decline to do so.
 
 
 12
 Smith also points to the differential in sentences received by him and his codefendants as evidence of prosecutorial vindictiveness. Smith's sentence, however, was well within the Guidelines. Although a court may depart from the Guidelines in order to reduce disparity between defendants convicted under different legal regimes (e.g., pre and post-Guideline sentences), even here "rigid equalization of codefendants' sentences is not required." United States v. Boshell, 952 F.2d 1101, 1108 (9th Cir.1991) (citation omitted). The decision to do so, moreover, is purely within the discretion of the district court. See United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992).
 
 
 13
 None of the above cited actions can be considered as evidence of prosecutorial vindictiveness. This leaves only the use of certain charts at trial as evidence of prosecutorial misconduct. Smith claims he was not given meaningful opportunity to examine and object to the charts that were, by the government's own admission, misleading.
 
 
 14
 The government was not required to provide more of an opportunity to object to the charts than what was provided for (and taken advantage of by) Smith. See United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir.1987), cert. denied, 484 U.S. 1064 (1988), overruled on other grounds, Cheek v. United States, 498 U.S. 192 (1991) (charts used as pedagogical devices are not subject to the out-of-court review requirements of Federal Rule of Evidence 1006).
 
 
 15
 The charts could conceivably have created a prejudicial picture in the jury's mind that Smith was a much larger participant than was actually the case. Whatever prejudice may have occurred was mitigated, however, by the defense's corrective statements during its opening argument and by cross-examination of the government's expert who drew the chart.
 
 
 16
 Even if we were to consider the use of the charts as evidence of prosecutorial misconduct, the evidence would be insufficient to prove prosecutorial vindictiveness. Smith relies on a "cumulative view" of various actions by the prosecution; in the end, however, there is only one act to be viewed. There being nothing to "add together," Smith's own concession decides the issue: no one prosecutorial act cited by Smith can be deemed sufficient to warrant a reversal of Smith's conviction.
 
 III
 
 17
 Smith argues that the government deprived him of "certain legal papers" and thereby "deprived him of a fair trial and due process."
 
 
 18
 The missing papers were a constant subject of debate during the trial. According to Smith, he raised the issue of the missing papers "many, many times." The government points out that Smith also indicated "many, many times" that his defense was not prejudiced in any way by the missing material.
 
 
 19
 Smith does not dispute the fact that, at trial, he explicitly waived his right to raise a claim regarding the missing papers. Smith instead argues that the waiver was "forced" by the exigencies of trial; he could not risk alienating the judge and "an impatient jury" by demanding a delay until the papers were returned. Moreover, his waiver came before he knew the documents had been "tampered with."
 
 
 20
 Putting aside for the moment Smith's claim that the government tampered with his papers (see government intrusion discussion below), Smith's claim of prejudice-by-deprivation must fail. He made repeated statements to the trial court that he was not prejudiced by the deprivation. There is no evidence that Smith's statements waiving this issue were coerced in any way by the government. Accordingly, Smith's waiver stands.
 
 
 21
 Finally, Smith claims the court erred by denying Smith's motion for an evidentiary hearing and discovery regarding the government's interception of, and tampering with, his legal papers.
 
 
 22
 Smith claims that there was evidence of his documents being copied or removed which, when added to the "undisputable fact" that it was the government who took his papers, established before the district court a prima facia case of government intrusion. According to Smith, the court applied the wrong standard by requiring evidence that the prosecution actually saw the documents; to Smith, it was enough that someone in the government saw his papers.
 
 
 23
 In fact, the court clearly rejected Smith's claim that anyone in the government saw his papers. As Smith himself points out, the court believed Smith "fail[ed] to prove 'the prosecuting attorney and the agents involved in the case' obtained any information from Smith's papers." The court further expressed its "incredulity that the documents were even viewed by the U.S. Marshals or Bureau of Prison's personnel while in their possession."
 
 
 24
 Smith recognizes the court simply chose to believe the government witnesses over his own testimony, but maintains he was "given no realistic chance to find and then present his own witnesses." Smith does not tell us what is a "realistic chance" and how it differs from the opportunity he had to present witnesses at the hearing.
 
 
 25
 Smith's essential point is that the court erred in requiring him to present evidence that the prosecution saw his documents before according him the opportunity to conduct discovery. Here Smith is clearly incorrect. The court denied further discovery regarding who saw his documents because the court did not believe anyone had seen his documents. The court, in other words, did not believe Smith. Special deference is paid to the district court's credibility determinations. United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991); see also Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference [than the clearly erroneous standard] to the trial court's findings...."). We see no reason to set aside the court's findings.
 
 V
 
 26
 The case is withdrawn from submission. We REMAND to the district court for the limited purpose of making additional findings regarding the existence and content of a local inventory search policy. This panel will retain jurisdiction and the case will be resubmitted without further order from this court upon the filing of the district court's findings.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3